NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002852
30-JUN-2015
08:44 AM

NO. CAAP-13-0002852

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
COLIN D. GARDNER, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2DTC-13-004202)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Leonard and Reifurth, JJ.)

Defendant-Appellant Colin D. Gardner appeals from the
Notice of Entry of Judgment and/or Order and Plea/Judgment, filed
on July 19, 2013, in the District Court of the Second Circuit,
Wailuku Division ("District Court").[1]  The District Court
convicted Gardner of excessive speeding, in violation of Hawaii
Revised Statutes ("HRS") § 291C-105(a)(1) (2007).[2]

On appeal, Gardner contends that (1) the District Court
erroneously denied his oral motion to suppress the speed reading
generated by the Laser Technology Incorporated ("LTI") 20-20
TruSpeed laser gun ("LTI 20-20" or "Laser Gun") because
Plaintiff-Appellee State of Hawai'i failed to lay a sufficient
foundation for its admission into evidence.  Specifically,
Gardner argues that the State failed to establish that (a) the
nature and extent of Maui Police Department ("MPD") Officer Carl
Eguia's training in the use of the Laser Gun met the requirements
indicated by the manufacturer; (b) the Laser Gun was tested

---

[1]     The Honorable Richard A. Priest, Jr. issued the Judgment.

[2]     HRS § 291C-105(a)(1) provides: "No person shall drive a motor
vehicle at a speed exceeding . . . [t]he applicable state or county speed
limit by thirty miles per hour or more[.]"

according to the manufacturer's recommended procedures and was found to be working properly; and (c) the Laser Gun had been inspected and serviced as required by the manufacturer. Gardner further contends that (2) without the Laser Gun's speed reading, the State presented insufficient evidence to support his conviction.[3]

In response, the State concedes that the District Court erred in concluding that the State laid a sufficient foundation for the speed reading given by the Laser Gun and in denying Gardner's motion to suppress the speed reading of seventy-six miles per hour. Nonetheless, "appellate courts have an independent duty 'first to ascertain that [a party's] confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'" *State v. Veikoso*, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (quoting *State v. Hoang*, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000)). In other words, the State's concession of error "is not binding upon an appellate court," *Hoang*, 93 Hawai'i at 336, 3 P.3d at 502 (quoting *Territory v. Kogami*, 37 Haw. 174, 175 (Haw. Terr. 1945)) (internal quotation marks omitted), so we proceed on the merits.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments they advance and the issues they raise, as well as the relevant statutory and case law, we resolve Gardner's points of error as follows, and affirm.

(1) The District Court did not abuse its discretion by admitting the speed-reading evidence. *See State v. Assaye*, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009) ("[T]he determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse." (quoting *State v. Loa*, 83 Hawai'i 335, 348, 926 P.2d 1258, 1271 (1996)) (internal quotation marks and original brackets omitted)).

---

[3]    Garner's points of error have been reordered for clarity.

(1)(a) In Hawai'i, prosecutors can establish a sufficient foundation for admitting evidence of a laser gun's speed reading by "produc[ing] evidence that the 'nature and extent of an officer's training in the operation of the laser gun meets the requirements indicated by the manufacturer.'" *State v. Amiral*, 132 Hawai'i 170, 178, 319 P.3d 1178, 1186 (2014) (quoting *Assaye*, 121 Hawai'i at 215, 216 P.3d at 1238). To that end, we must determine whether the State has provided evidence of (i) the training requirements indicated by the Laser Gun manufacturer and (ii) the extent of training that Officer Eguia actually received. *Id.* (citing *State v. Gonzalez*, 128 Hawai'i 314, 327, 288 P.3d 788, 801 (2012)). We conclude that the State established both of these elements and reject Gardner's challenge to the sufficiency of Officer Eguia's training.

The State "could . . . establish[] the type of training the manufacturer recommended" by providing the court with evidence that course instructors were "actually certified by the manufacturer or had been trained by the manufacturer," "that the training course itself was approved by the manufacturer or was consistent with the manufacturer's requirements," and that "the [operator] learn[ed] to perform the four tests" set forth in the laser gun's manual to verify its accuracy. *Amiral*, 132 Hawai'i at 179, 319 P.3d at 1187.

Here, Officer Eguia testified that Bob Long, a representative of LTI (the Laser Gun's manufacturer), certified the instructor who trained Officer Eguia on how to use the Laser Gun. Moreover, Officer Eguia testified that he himself had been trained and certified by the manufacturer's representative *as an instructor* on how to use the Laser Gun.

Q. [By Deputy Prosecutor] When did you meet Mr. Long?

A. In September of 2012.

Q. And on what occasion?

A. For training. He was there for a training for us.

Q. What kind of training was that?

A. Laser training.

Q. And was he the instructor?

A. Yes, he was.

Q. And was -- who put on this training?

A. It was MPD, but Officer Arns was in charge of the training, conducting or making sure the training went on as scheduled.

Q. And so what was Mr. Long's position there?

A. He was a representative of LTI, and he's also the State of Hawaii coordinator for the highway safety department for the Department of Transportation.

Q. So, is this the same training that we're talking about that you had the certification?

A. Yes. This is a -- well, it's a different training. It's another certification on top of that.

Q. And what is this other certification called?

A. It's instructor certification.

Q. Instructor certification for what?

A. For laser.

Q. For the LTI?

A. Yes.

Q. And did you go through that training?

A. Yes.

Q. And what was the result of your going through that training?

A. I passed.

Q. So how many certifications do you have?

A. I have the -- for just the laser, I have, well, the user certification and the instructor certification.

Q. And your user certification, who issues that certification?

A. That was from Officer Arns.

Q. And in what capacity is that certification?

A. It's to utilize and test the laser.

Q. And who gives the certification?

A. That certification comes from Officer Arns. The instructor certification comes from Bob Long.

Q. And is it an MPD certification?

A. From Arns or --

Q. From the user certification, does it say MPD certified?

A. The one from Officer Arns, yes. The one from Bob Long actually says LTI certification. I have my cards with

4

me if you want to see them.

Q. And the LTI certification, what is the date of that?

A. The LTI certification, if I can look at my cards, I'll tell you. I think it's 9/21/12. But I do not recall. I have it in my pocket though.

Q. Okay. Do you remember what year it was?

A. 2012.

Q. Okay. Would that have been valid on January 9, 2013 [(the date the citation was issued in this case)]?

A. Yes.

(Emphases added.)

In addition, Officer Eguia provided extensive testimony about the type of training he received in obtaining his user certification, including that his training lasted six hours; that his training consisted of classroom instruction, practice in operating the Laser Gun and performing the four tests set forth in the manufacturer's manual for the Laser Gun to ensure that it was working properly, and written and practical tests on these matters; and that he passed both the written and practical tests and was certified to use and test the Laser Gun. Officer Eguia also testified that he has used the Laser Gun "a few hundred times" as a police officer. We conclude that the evidence presented, which included that Officer Eguia was trained and certified by the manufacturer's representative as an instructor in the use of the Laser Gun, together with the evidence of the extent of his training, was sufficient to show that Officer Eguia's training met "the requirements indicated by the manufacturer." *See Amiral*, 132 Hawaii at 178, 319 P.3d at 1186."

(1)(b) Gardner claims that the State failed to establish that Officer Eguia tested the Laser Gun in accordance with LTI-recommended procedures and that it was operating properly on the date Gardner was cited for the traffic violation. We disagree. In *Gonzalez*, the supreme court found that the following evidence was sufficient to show that the laser gun was working properly:

It is undisputed that [the operator, a police officer,] possessed a manual that recommended four procedures to verify the accuracy of the laser gun, and that [the

operator] did in fact observe those procedures. The only issue is whether the State demonstrated that the manual containing the procedures was provided by LTI, the laser gun's manufacturer. [The operator] testified at trial that the manual was "from [LTI]." Further, on cross-examination, [the operator] related that the manual bore the LTI copyright, that it was reviewed by LTI personnel, and that information provided by the same LTI personnel was "covered in the manual we use to train on." Based on this testimony, it was within the [trial] court's discretion to conclude that the manual was provided by the manufacturer and, therefore, the procedures contained therein were recommended by the manufacturer.

128 Hawaiʻi at 325-26, 288 P.3d at 799-800. The evidence presented was sufficiently similar here to justify the same outcome.

In this case, Officer Eguia testified that when he received the Laser Gun, he also received the original manual that came with the Laser Gun. He testified, without objection, that the manual he received and on which he was trained was the manufacturer's manual for the Laser Gun, and that the cover of the manual had "LTI TruSpeed 20-20 laser" with "a picture of a laser gun" on it. He further testified that the manual contained instructions on the manufacturer's four required accuracy tests, that he has personally read the manual several times, that the training course was conducted "in conformance with," and was "based on," the manual, and that he performed all four required accuracy tests on his Laser Gun "prior to hitting the road" on the January 2013 date of Gardner's traffic incident. We conclude that this evidence demonstrates that the District Court acted within its discretion in concluding that the State had laid a sufficient foundation that the Laser Gun was operating properly when Officer Eguia used it in this case. *See Gonzalez*, 128 Hawaiʻi at 326, 288 P.3d at 800.

(1)(c) Gardner argues that in order to lay a sufficient foundation for the Laser Gun's speed reading, the State was required to demonstrate that the Laser Gun was inspected and serviced according to the manufacturer's requirements. We disagree. In *Gonzalez*, the supreme court found the evidence sufficient to establish the laser gun was in good working order without requiring evidence that it had been inspected and serviced by the manufacturer. Based on *Gonzalez*, we reject

6

Gardner's contention that evidence of inspection and servicing by the manufacturer was necessary to lay a proper foundation for the admission of the Laser Gun's speed reading.

(2) Given our conclusion that evidence of the Laser Gun's speed reading was admissible, we find that the State adduced sufficient evidence to prove every element of Gardner's offense beyond a reasonable doubt. *Cf. Assaye*, 121 Hawai'i at 216, 216 P.3d at 1239 (reversing conviction under HRS § 291C-105(a) for insufficient evidence).

Therefore, IT IS HEREBY ORDERED that the Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on July 19, 2013, in the District Court of the Second Circuit, Wailuku Division, is affirmed.

DATED: Honolulu, Hawai'i, June 30, 2015.

On the briefs:

Ryan A. Ha,
Deputy Public Defender,
for Defendant-Appellant.

Artemio C. Baxa,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

7